**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DUJAN MANLEY,

                              Plaintiff,                  1:16-CV-796
                                                             (NAM/CFH)

v.

CHAMPLAIN STONE, LTD.; JOHN DOE #1;
JOHN DOE #2; JANE DOE #1;
JANE DOE #2,

                              Defendants.
_____

APPEARANCES:

DUJAN MANLEY
Plaintiff pro se
206-471-587
Buffalo Federal Detention Facility
420 Federal Drive
Batavia, New York 14020

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. Background

      On November 10, 2016, U.S. Senior District Judge Norman Mordue adopted in its entirety the undersigned's Report-Recommendation and Order dated November 11, 2016.  Dkt. Nos. 8, 10, 11.  On October 28, 2016, plaintiff filed an amended complaint.  Dkt. No. 9.  On March 29, 2017, the Court issued an amended order which corrected an error, referring the matter back to the undersigned to review plaintiff's amended

complaint, filed on November 10, 2016. Dkt. No. 11.

In the October 11, 2016 Report-Recommendation and Order, the undersigned concluded that 41 U.S.C. § 1981 would provide the only avenue under which plaintiff could bring an alienage-based discrimination claim against defendant. Dkt. No. 8 at 5. and recommended that the plaintiff be provided an opportunity to amend "to provide sufficient facts that would support his claim for relief as detailed within this Report, Recommendation & Order[.]" Dkt. No. 8 at 5, 13.

## II. Review of Amended Complaint

Plaintiff's amended complaint largely parrots the statutory and case law set forth in the undersigned's Report-Recommendation and Order. Although plaintiff provides additional factual support for his state-law negligence claims, he provides little detail for his discrimination claims. See Dkt. No. 9.

### A. Personal Involvement

As a threshold issue, although plaintiff arguably has specified the personal involvement of the two John Doe and two Jane Doe defendants in his state law claims, he has not done so for all defendants with respect to his Section 1981 claim. Dkt. No. 9 at 6. Plaintiff alleges that John Doe #1, his manager, told him that he was "sorry but he have [sic] to fire him because plaintiff is not a U.S. citizen and his visa does not allow him to work in the United States," something that plaintiff contends John Doe #1 was aware of when he hired him. Id. Plaintiff alleges that Jane Doe #1, a secretary, also

2

knew plaintiff's inability to work legally in the United States he was hired. Id. at 6. However, plaintiff does not contend that Jane Doe #1 had any authority over his hiring or firing. See generally Dkt. No. 9. Thus, plaintiff fails to demonstrate Jane Doe #1's personal involvement.

As for Jane Doe #2, plaintiff contends that when he called defendant Champlain Stone the following day, Jane Doe #2 told him over the phone that "we" – herself and John Doe #1 – had to fire plaintiff "because he is not a U.S. citizen and his visa does not allow him to work in the United States." Id. Although plaintiff does not provide her title or allege that she has authority to hire or fire employees, plaintiff contends that Jane Doe #2 "holds a supervisory position" and is a "supervisory employee" for defendant. Id. at 7. Arguably, giving plaintiff special solicitude, this appears sufficient to demonstrate Jane Doe #2's personal involvement at this early stage. However, as for the remaining individual defendant, John Doe #2, plaintiff makes no mention of John Doe #2. Thus, plaintiff has failed to allege John Doe #2's personal involvement in any section 1981 violation.

### B.  Section 1981

Plaintiff contends that he was lawfully in the United States under a "10 year visa." Dkt. No. 9 at 6. Although plaintiff contends that he was terminated "because he is not a U.S. citizen and his visa does not allow him to work in the United States," he concedes that his "10 year visa" did not permit work within the United States. Id. Although

3

section 1981 prohibits alienage-based discrimination,[1] including discrimination within at-will employment, it does not appear, even under a liberal reading of plaintiff's amended complaint, that plaintiff's termination falls under such confines. Although plaintiff stated that he was terminated both because he was not a U.S. citizen and could not legally work, even a cursory reading of his amended complaint provides that his argument is that he was terminated due to his inability to legally work in the United States, not his alienage. See generally Dkt. No. 9.

To demonstrate discrimination under Section 1981, a plaintiff must allege that (1) he is a member of a protected class, (2) defendant intentionally discriminated against him on the basis of his membership in that protected class, and (3) the discrimination concerned one of the statute's enumerated activities. Juarez v. Northwestern Mut. Life. Ins. Co., Inc., 69 F. Supp. 3d 364 (S.D.N.Y. 2014) (citing Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000)). Significantly, Section 1981 can be violated only by conduct motivated by a discriminatory purpose. Id.

The undersigned finds instructive the case Juarez v. Northwestern Mutual Life Ins. Co. Inc. but concludes that Juarez differs from the case before the Court. 69 F. Supp. 3d 364 (2014). In Juarez, the Southern District concluded that the defendant's policy, which resulted in the refusal to hire as an intern a lawfully-present alien due to his lack of either U.S. Citizenship or a green card, violated Section 1981. In Juarez, the Southern District of New York rejected the arguments of the defendant, the would-be

---

[1] As set forth in the prior Report-Recommendation and Order, section 1981 does not protect against discrimination on the basis of national origin, which is distinct from alienage. Anderson v. Conboy, 156 F.3d 167, 170, 180 (2d Cir. 1998); Dkt. No. 8.

4

employer, that its policy of hiring only U.S. Citizens and green card holders was nondiscriminatory because: (1) the plaintiff was denied employment due to his work status, not his immigration status; and (2) the policy permitted employment for some legal aliens, which "render[ed] implausible any allegation that the company refused to hire [the plaintiff] 'because of' his citizenship." 69 F. Supp 3d at 368. In relevant part, the Court concluded that the policy violated section 1981 because (1) section 1981 protected all lawfully-present aliens, regardless of whether they have a green card; (2) "a plaintiff need not allege discrimination against all members of a protected class to state a claim under § 1981; and (3) "a plaintiff can plead intentional discrimination by alleging that the defendant acted pursuant to a facially discriminatory policy requiring adverse treatment based on a protected trait." Id. at 369. Significantly, the plaintiff was otherwise legally eligible to work in the United States. See id. at 365-66, 366 n.3 (noting that the plaintiff was in the U.S. pursuant to the Deferred Action for Childhood Arrivals, "a federal program that authorizes recipients to remain in the United States for two years and to obtain an Employment Authorization Document ("EAD"), a federal work permit, and a Social Security number. Juarez obtained an EAD around the same time and received a Social Security number[.]").

Assuming, as we must at this juncture, that plaintiff was legally in the United States, section 1981 protections apply to plaintiff.[2]  However, the mere fact that plaintiff

---

[2] The undersigned determines that it is not necessary to reach the question whether section 1981 applies to aliens not legally in this country. As the Court must take plaintiff's allegations as true, the undersigned must take as true plaintiff's allegation that he was legally present in the United States at the time of the alleged discriminatory conduct.

5

is protected under section 1981 does not mean that it protects him against the allegations in the complaint.  This case differs from Juarez in a substantial way.  Although the Southern District addressed and answered in the affirmative a somewhat related argument – whether a policy that facially discriminates against a certain type of legal alien, non-green card holders otherwise lawfully in the United States, but not all aliens violates Section 1981 – it did not need to reach question here: whether 1981 protections against alienage discrimination in employment-related matters apply where the plaintiff, legally in the United States, is not legally authorized to work.  The undersigned believes they do not and that the Juarez Court had not intended to extend section 1981 protections this far.  It would appear that in Juarez, the policy at question discriminated against some lawfully-present aliens who would *otherwise be qualified to work in the United States*, through methods other than a green card, but could not work due to the defendant's green card or citizen policy.  See Juarez, 69 F. Supp. 3d at 369.

     The Court's concern in Juarez was that the policy "on its face discriminates against a subclass of lawfully present aliens."  Id. at 368.  In Juarez, because the Court determined the hiring policy to be  facially discriminatory ,[3] the Southern District concluded that the plaintiff was "not required to make any further allegations of discriminatory intent or animus."  Id. at 370.  Unlike in Juarez, here, the only "discriminatory" action plaintiff alleges – his termination – is not discriminatory on its face.  Thus, plaintiff must offer some additional evidence of discrimination.

---

   [3]  The Court defined facial discrimination as "discrimination 'because of' a protected characteristic."  69 F. Supp. 3d at 370.

6

A review of plaintiff's amended complaint demonstrates that plaintiff was not singled out from other lawfully-present aliens or citizens because of his immigration status.  See generally Dkt. No. 9.  Beyond contending that he was terminated because he was not a U.S. Citizen and his visa did not permit him to work, plaintiff sets forth no allegations of discriminatory intent or animus.  Id.  He does not demonstrate that he was terminated due to his alienage rather than due to his lack of a work visa.   Even assuming defendants knew that plaintiff could not legally work in the United States at the time of his hire, knowledge of his lack of work visa such does not require a finding that his termination must be discriminatory and on the basis of alienage.  Although plaintiff contends that defendants John Doe #1 and Jane Doe #2 were aware of the fact that his visa did not permit him to work within the United States when he was hired, even if plaintiff was legally within the United States, laws exist making it illegal for employers to employ a person who does not have a work visa.  See, e.g., Immigration Reform and Control Act, 8 U.S.C. § 1324a; Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 148 (2002).  Thus, to follow plaintiff's logic could result in a situation where an employer would face liability under section 1981 for terminating an employee, not because of intentional alienage discrimination, but because they could not legally work within the United States, but if the employer hired or continued employment with that person, it could face civil and criminal implications as a result of that hiring or continued employment.   Accordingly, it is recommended that plaintiff's

complaint, insofar as it alleges section 1981 violations, be dismissed with prejudice.[4]

Although the undersigned recognizes that pro se plaintiffs often should be afforded an opportunity to amend prior to outright dismissal, plaintiff has already been given this opportunity and he submitted an amended complaint.  See Dkt. Nos. 8, 9, 11; Abscal v. Hilton, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008)[5] (noting that providing pro se plaintiff a second opportunity to amend is not required when the plaintiff had already been provided an opportunity to amend).  The undersigned does not recommend further opportunity to amend.

### C.  State Claims

As a final matter, to the extent plaintiff re-pleads in his amended complaint his claims relating to negligence and labor law violations, although this Court has the authority to address these claims due to its supplemental jurisdiction, because the undersigned recommends dismissal of plaintiff's federal claim, it is recommended that the Court decline to exercise supplemental jurisdiction over his state law claims.  See, e.g., Purgess v. Sharrock, 33 F.3d 134, 138 (2d. Cir.1994) (citing Castellano v. Board of Trustees, 937 F.2d 752, 758 (2d Cir.1991)).  Accordingly, it is recommended that plaintiff's state law claims be dismissed with prejudice in this Court, but without prejudice to plaintiff re-filing his state-based claims in state court, should he decide to

---

[4] In so recommending, the undersigned makes no comment as to the viability of plaintiff's state-law negligence/labor law claims.

[5] Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

proceed in that manner

### III. Conclusion

**WHEREFORE**, it is **HEREBY**

**RECOMMENDED**, that plaintiff's amended complaint be **DISMISSED with prejudice** in its entirety, but that the dismissal be **without prejudice to plaintiff re-filing his state law claims in state court**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules. Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**IT IS SO ORDERED.**

Dated: June 12, 2017
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge